JUL 01 '02 13:49 FR US CUSTOMS SERVICE     407 648 6827 TO 18133481531        P.04/13

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

NICHOLAS ROMANO,

    Plaintiff,

v.

DANIEL J. FRITTON and
WILLIAM GILBREATH

    Defendants.
_____/

CASE NO.: 02 CA 5917

40

COMPLAINT

COMES NOW, Plaintiff, NICHOLAS ROMANO by and through his undersigned counsel, and sues Defendants, DANIEL J. FRITTON ("FRITTON") and WILLIAM GILBREATH ("GILBREATH"), and states:

## ALLEGATIONS COMMON TO ALL COUNTS

1. This is an action for damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees and is within the jurisdiction of this Honorable Court.

2. Plaintiff is an individual residing in Orange County, Florida.

3. Defendant, FRITTON is an individual residing in Orange County, Florida.

4. Defendant, GILBREATH is an individual residing in Orange County, Florida.

## COUNT I - LIBEL AGAINST FRITTON

5. Plaintiff realleges the allegations set forth in paragraphs 1-4 as if fully set forth herein.

6. Plaintiff was and is a person of good name, credit and reputation and enjoyed the esteem and good opinion of his neighbors and others who know him.

7. Defendant, FRITTON knew of the good name, credit and reputation of Plaintiff.

CASE NO.:

8. On November 29, 2001 in Orange County, Florida, Defendant composed and published an e-mail. A copy of which is attached hereto as Exhibit "A".

9. The following false, scandalous and defamatory statements coming the Plaintiff was made:

> "If they ask me if I have ever heard Nick refer to Mr. Brown as a Nigger, The answer will be a definite yes; and "The fact of the matter is that Nick did state to me "He's Nothing But A Nigger" referring to Mr. Brown".

10. Two months earlier, on September 13, 2000, in Orlando, Florida, Defendant, FRITTON swore under oath the following:

> "That during my working relationship with NICHOLAS ROMANO, I have not ever witnessed Nick Slandering attempting to slander ..Russell Morgan (Jamaican decent); and

> "Quite the contrary it should be noted that on several occasions I myself have directly pun's or verbal jab's toward Russ Morgan as have many of the port staff both on and off the clock and both before Russ Morgan's application for the recent supervisory position and during the selection-process. During these moments if Nick were present he would usually say the usual "Come On Guys ! Stop It" of "Hey I Don't Want To Hear That Stuff Here."

11. Defendant, FRITTON made these statements maliciously intending to injure Plaintiff and to bring Plaintiff into public scandal and disgrace. A copy of which is attached as Exhibit "B".

12. As a result, Plaintiff was injured in his good name, credit and reputation and brought into public scandal and disgrace, has been shunned by many persons with whom he previously had social or business relations, has suffered mental anguish and has been injured in his business by having lost trade and experience difficulty in obtaining promotions.

WHEREFORE, Plaintiff, NICHOLAS ROMANO demands judgment against Defendant,

-2-

JUL 01 '02 13:49 FR US CUSTOMS SERVICE    407 648 6827 TO 18133481531    P.06/13

CASE NO.:

FRITTON for all damages allowable pursuant to Florida law and a trial by jury.

## COUNT II - SLANDER AGAINST GILBREATH

13. Plaintiff realleges the allegations set forth in paragraphs 1-4 as if fully set forth herein.

14. On or about July 9, 2001, in a sworn conversation concerning Plaintiff, which was reduced to writing, Defendant GILBREATH, falsely spoke the following words:

> "Mr. Gilbreath confirmed that Supervisor Romano did in fact use the term nigger when referring to Port Director Brown".

15. By the words quoted in paragraph 14, Defendant, GILBREATH intended to say and publish that Plaintiff was a racist. The Affidavit of this telephonic interview is attached hereto as Exhibit "C"

16. The statement in the Affidavit were false and tended to degrade and injure Plaintiff in his good name, credit and reputation and exposed Plaintiff to distrust, hatred, contempt and obloquy.

17. As a result, Plaintiff was injured in his good name, credit and reputation and brought into public scandal and disgrace, has been shunned by many persons with whom he previously had social or business relations, has suffered mental anguish and has been injured in his business by having lost trade and experience difficulty in obtaining promotions.

WHEREFORE, Plaintiff, NICHOLAS ROMANO demands judgment against Defendant, GILBREATH for all damages allowable pursuant to Florida law and a trial by jury.

-3-

CASE NO.:

Respectfully submitted,

JASON SCOTT RUDOLPH, P.A.
Attorney for Plaintiff, ROMANO
The Courthouse Tower, Suite 2400
44 West Flagler Street
Miami, Florida 33130
Telephone: (305) 379-8438
Facsimile: (305) 577-8618

By: _____
Jason Scott Rudolph, Esquire
Florida Bar Number 58203

-4-

```
Author: DANIEL FRITTON at A2K-ORLANDO-1
Date:   11/29/01   9:28 AM
Priority: Normal
TO: GARY A MCCLELLAND at CMC-TAMPA-1, DANIEL FRITTON
Subject: romano/investigation
------------------------------- Message Contents -------------------------------
```

Hey Gary:
I have been pondering our conversation about right and wrong etc. at B.G.'s Party. Should you get into a legal fix re. same. Send someone to interview me. If they ask me if I have ever heard Nick refer to Mr. Brown as a Nigger, The answer will be a definate yes. And if they ask me weather I was ever threatened by Nick regarding same then my reply will be,,yes. That is , Because Nick interviewed me awhile back at the beginning of his investigation and stated to me that He thinks he knows who is slandering his name. He also stated that when he finds out for sure that he is going to sue them. I percieve that as a threat. Fact of the matter is I live in a glass house at times, but still the fact of the matter is that Nick did state to me "He's Nothing But A Nigger" refering to Mr. Brown.
Of course POE Orlando inspectors like nick and will hate me and I will be dirt But Da facts is Da facts..Dan...Feel free to pass this info on to Karl.

EXHIBIT "A"

Received Jul-16-02 12:30pm   From-+18133013001   To-U S ATTORNEY ORLANDO   Page 12
JUL 01 '02 13:50 FR US CUSTOMS SERVICE   407 648 6827 TO 18133481531   P.09/13



## Attachment 3

# ADMINISTRATIVE INQUIRY AFFIDAVIT

State of **Florida**  
County of **Orange**

Page **1** of **2**

I, **Daniel J Fritton**, do hereby depose and say:

That during my working relationship with Nicholas Romano, I have not ever witnessed Nick slandering attempting to slander, or attempting to influence employees judgement regarding the disposition of Russell Morgan.

Quite the contrary it should be noted that on several occasions I myself have directed pun's or verbal jab's toward Russ Morgan as have many of the port staff both on and off the clock and both before Russ Morgans application for the recent supervisory position and during the selection process. During these moments if Nick were present he would usually say the usual " Come On Guys ! Stop It " or " Hey I Don't Want To Hear That Stuff Here."

I believe that I am pretty much in the mainstream with regard to keeping my ear to the ground when it comes to port gossip. Not so much to attain any greatness but to keep my bases covered so as to maintain a good working relationship with all port personnel. This is why I am sure that Nick Romano has not attempted to de-throne Russ Morgan in any way shape or form.

I have direct knowledge of three separate allegations that were directed toward Russ Morgan in the recent past, specifically during his supervisory selection process. These allegations however severe have been investigated and Russ Morgan has been cleared and has returned to a normal life. The allegations that I am aware of were to my knowledge submitted by three separate persons and submitted solo without any cohersion by Nick romano.

I won't go into depth on my personal feelings regarding the above mentioned but I will say that sometimes in life its easier to place partial blame on others for ones faults than to accept responsibility for ones actions. *Nick*

*Daniel J Fritton* (signature)

EXHIBIT "B"
+18133013001   From-US ATTORNEY   12:29pm   Jul-16-02
T-654   P.12/20   F-677

Received  Jul-16-02  12:30pm    From-+18133013001          To-U S ATTORNEY ORLANDO     Page 13
JUL 01 '02 13:50 FR US CUSTOMS SERVICE    407 648 6827 TO 18133481531        P.10/13



## Attachment 4

# ADMINISTRATIVE INQUIRY AFFIDAVIT

Page 2 of 2

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____
7 _____
8 _____
9 _____
10 _____

I have read the foregoing statement consisting of __2__ pages, of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each. Should I become aware of any additional information regarding the matter for which I provided this statement. I will promptly contact the fact finder and provide such information. I made this statement freely and voluntarily without any threats or reward, or promises of reward having been made to me in return for it.

_Daniel J Fritton_
Signature of Affiant

Subscribed and sworn to before me this __13__ day of __September__, __2000__.
at __Orlando, Florida__

Signature of fact finder: _____

Printed name of witness: __GOPIE C. PERSAUD__

Signature of witness: __Gopie C. Per__

Jul-16-02  12:29pm  From-US ATTORNEY        +18133013001      T-654  P.13/20  F-677

JUL 01 '02 13:50 FR US CUSTOMS SERVICE    407 648 6827 TO 18133481531    P.11/13

# APPENDIX I

Form
Department of Treasury
U.S. Customs Service

---

### THIRD PARTY WITNESS INTERVIEW NOTIFICATION

---

You are not currently the subject of this investigation. However, you may be held responsible for any false statements you make or for any violation of the U.S. Customs Service Code of Conduct that you admit. Therefore, if at any time during the interview you reasonably believe that you may be subjected to discipline as a result of your statements, you may request representation by the exclusively recognized labor organization for the unit in which you work.

---

I acknowledge receipt of the aforementioned notification of my rights.


_David E. Fuller_                         9-13-00
**Signature of Employee**                 **Date**

Case 6:02-cv-00814-GAP   Document 2   Filed 07/18/02   Page 9 of 14 PageID 14

Received  Jul-16-02  12:30pm   From-+18133013001        To-U S ATTORNEY ORLANDO    Page 15
JUL 01 '02 13:51 FR US CUSTOMS SERVICE     407 648 6827 TO 18133481531    P.12/13



## Attachment 3

# ADMINISTRATIVE INQUIRY AFFIDAVIT

State of __Michigan__  
County of __St. Clair__

Page __1__ of __2__

I, __Robert O. Prause__, do hereby depose and say:

1  William Gilbreath was telephonically interviewed by the writer on
2  July 9, 2001. Mr. Gilbreath was a Supervisory Customs Inspector in
3  the Port of Orlando, Florida, until the time of his retirement. Mr.
4  Gilbreath was asked of his recollection of an alleged conversation
5  that took place in his office with Supervisory Customs Inspectors
6  Romano and McClelland in which Supervisor Romano referred to Port
7  Director Brown as a nigger. Mr. Gilbreath confirmed that Supervisor
8  Romano did in fact use the term nigger when referring to Port
9  Director Brown. Mr. Gilbreath relates that he and Supervisor
10 McClelland had been assigned the task of revising the Orlando
11 supervisory work schedule to adjust to recent budgetary overtime
12 constraints. The outcome of this effort had resulted in a reduction
13 of overtime earnings for shift supervisors. Supervisor Romano
14 was very upset with the course of action taken by Port Director
15 Brown and Chief Inspector Kadish to reduce supervisory overtime.
16 Mr. Gilbreath cannot recall the exact date this event occurred but

(Affiant's signature)

EXHIBIT "C"

Received Jul-16-02 12:30pm From-+18133481001 To-U S ATTORNEY ORLANDO Page 16

JUL 01 '02 13:51 FR US CUSTOMS SERVICE 407 648 6827 TO 18133481531 P.13/13

## Attachment 3

# ADMINISTRATIVE INQUIRY AFFIDAVIT

Page 2 of 2

1 estimates the time as approximately December 1998 or January 1999.
2
3
4
5
6
7
8
9
10

I have read the foregoing statement consisting of __2__ pages, of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each. Should I become aware of any additional information regarding the matter for which I provided this statement, I will promptly contact the fact finder and provide such information. I made this statement freely and voluntarily without any threats or reward, or promises of reward having been made to me in return for it.

Signature of Affiant

Subscribed and sworn to before me this __20th__ day of __July__, __2001__,
at __Port Huron, Michigan__

Signature of fact finder: _____

Printed name of witness: _Russell H. Day_

Signature of witness: _____

Jul-16-02 12:30pm From-US ATTORNEY +18133481001 T-654 P.16/20 F-677

EXHIBIT 17

## THE COMMISSIONER OF CUSTOMS



WASHINGTON, D.C.

March 2, 1998

MEMORANDUM FOR ALL CUSTOMS EMPLOYEES

FROM:       Acting Commissioner

SUBJECT:    Policy on Prohibiting Discriminatory Harassment

In 1993, the U.S. Customs Service initiated an aggressive campaign to address misconduct associated with sexual harassment by creating the Sexual Harassment Task Force. I am pleased to capitalize on the successes of that initiative by expanding the venue of the Sexual Harassment Task Force to address misconduct associated with any form of discriminatory harassment[1].

The U.S. Customs Service upholds the principles of equal opportunity by ensuring that all practices and policies of the agency are applied without regard to race, color, sex (including sexual harassment and sexual orientation), national origin, age, religion, or disability. This agency vigorously enforces all antidiscrimination laws and regulations and takes the necessary steps to ensure that all of our programs and/activities are free of all forms of harassment. We must create and maintain an environment in which all employees, and those who conduct business with this agency, can perform their work free of interference from any improper conduct such as discriminatory harassment. This prohibition would extend to, and include, any off-duty misconduct that manifests itself in any discriminatory activities involving race, color, sex, national origin, age, religion, or disability against any individuals, which adversely affects the efficiency of the Service.

---

[1] Discriminatory harassment includes sexual harassment.

"Please visit the U.S. Customs Web at http://www.customs.ustreas.gov"

- 2 -

This policy prohibits discriminatory harassment, which is verbal or physical conduct that denigrates or shows hostility, or aversion toward an individual, or group of individuals, whether on or off-duty, because of race, color, sex, national origin, age, religion, or disability and creates an intimidating, hostile, or offensive work environment; or has the purpose or effect of unreasonably interfering with an individual's work performance. As covered in the policy, an "individual" is defined as either an employee, an applicant for employment, or any person who has contact with a Customs Service employee. Discriminatory harassment simply will not be tolerated in an agency that is charged with enforcing the law and protecting the rights of all Americans.

Examples of discriminatory harassment include, but are not limited to the following: epithets, slurs, negative stereotyping, or threatening, intimidating or hostile acts; unwelcome verbal or physical actions of a sexual nature; and written or graphic material which is posted or circulated in the workplace that denigrates or shows hostility or aversion toward an individual or group.

Employees who engage in discriminatory harassment will be subject to prompt and appropriate corrective action, up to and including removal from the Service. Any employee reporting an allegation of discriminatory harassment shall be free from reprisal or retaliation for so reporting. Employees who believe that they have been harassed because of their race, ethnicity, religion, sex, disability, or sexual orientation may report such behavior immediately to a supervisor or to a higher level agency official. Allegations can also be directly reported to the Equal Employment Opportunity Office, the Office of Internal Affairs, or to the harassment hotline at 1-800-488-7814.

Nothing in this policy shall be interpreted as precluding management from taking appropriate actions insofar as issuing a "cease and desist" order to an alleged harasser; however, management is further required to simultaneously report all allegations to the Harassment

- 3 -

Task Force[2], in the same manner as has been the procedure for reporting sexual harassment. The Harassment Task Force will review the allegation and ensure that prompt and appropriate action is pursued. Supervisors who either knew or should have known of the conduct and who fail to be accountable by taking prompt and appropriate action will be subject to corrective action, up to and including removal from the Service.

Supervisors and managers are responsible for ensuring that their employees are made aware of the contents of this policy by such avenues as postings, memos, discussions in staff meetings, etc. I expect each manager in the Customs Service to set the example in his or her organization by ensuring that the workplace is free of all forms of harassment.

---

[2]Formerly the Sexual Harassment Task Force.



**U.S. Customs Service**
9076 Binnacle Way
Orlando, FL 32827

TP-02-0159 KAK

July 11, 2002

Paul Perez
United States Attorney
400 N. Tampa Street, Suite 3200
Tampa, FL 33602

ATTN: Warren Zimmerman, Esq.
Chief, Civil Division

RE: <u>Romano v. Fritton and Gilbreath</u>, (9th Jud. Cir. State of Florida)
Case No. 02 CA 5917 40

Dear Mr. Perez:

United States Customs Service Senior Inspector Daniel J. Fritton is a defendant in the case referenced above which alleges that he made a defamatory statement against the plaintiff, Supervisory Customs Inspector Nicholas Romano. Senior Inspector Fritton provided information about the plaintiff's conduct that had been the subject of an official investigation by the U.S. Customs Service. Customs Service employees are required to report misconduct and to cooperate and provide relevant information during any inquiry into allegations of Customs employee misconduct. Senior Inspector Fritton provided information through the Agency's cc:mail system which stated that he had witnessed misconduct by the plaintiff. Accordingly, SI Fritton was acting within the scope of his employment in communicating information about the plaintiff's on-duty misconduct.

If you have any questions, please call me at (407) 240-4462, x226

Sincerely,

Karl A. Brown

Karl Brown
Area Port Director, Orlando
United States Customs Service

TRADITION
★
SERVICE
★
HONOR